Darwin D. **BUHLER**, Plaintiff and Appellant,

v.

Edwin **GOSSNER** et al., Defendants and Respondents.

No. 13598.

Supreme Court of Utah.

Jan. 7, 1975.

---

William J. Cayias, Salt Lake City, for plaintiff and appellant.

Raymond M. Berry of Worsley, Snow & Christensen, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Darwin D. Buhler sued for wrongful death of his 15 year old son, Robert Lee Buhler, who met his death while working in a grain silo on defendants' dairy farm in Cache County. Defendants had arranged Workmen's Compensation coverage for their employees; and they claim the protection of the statute which provides that is the exclusive remedy for injury or death to an employee.[1] Plaintiff counters that defendants are not entitled to that protection for two reasons: that no notice of such coverage was posted on the premises; and that Robert as a minor was illegally being permitted to work near machinery. Upon the basis of the pleadings, interrogatories, and the depositions, the trial court rejected plaintiff's contention and granted defendants' motion for summary judgment against the plaintiff; and the latter appeals.

The tragedy of the loss of this young boy's life in the unfortunate accident could not be overstated. However regrettable, and whatever it may now seem from hindsight might have been done to avoid it, those matters are of no assistance to the

---

1. Section 35–1–60, U.C.A.1953, provides that for an employee so covered the right to compensation as specified in the act ". . . for injuries sustained by an employee . . . shall be the exclusive remedy against the employer . . . ."

solution of the legal problem confronted here: whether plaintiff is entitled to maintain this action for damages for the death of his son.

Plaintiff's son Robert, age 15 years, 10 months, at the time of his death, was employed doing general farm work on defendants' farm during the summer of 1970. On August 17, 1970, he was inside a grain silo placing sideboards, and a belting lining, around the sides to contain the dry barley as it poured into the silo. When his older brother David Buhler, who was running a grain grinder nearby, came to the silo for more grain, he observed Robert's shoes in the grain. He and others extricated Robert, but he had suffocated. Pursuant to the Workmen's Compensation coverage there has been paid to the plaintiff: reimbursement of $14.20 for ambulance service and $525 for funeral and burial expenses; and there has been paid into the special fund the amount provided for by statute, where a deceased employee has no dependents.[2]

■ In preface to our consideration of the plaintiff's contentions, we make certain general observations which are applicable to his arguments about the Workmen's Compensation Act. It is undoubtedly true that the purpose of the Act is to benefit employees by affording a measure of economic security for themselves and their families, and other benefits ramifying therefrom, without the risks and uncertainties involved in attempting to prove that it was negligence on the part of the employer, and without fault on the employee's own part, which caused the injury or disability.[3] But the thrust of this liberal construction of the Act means to find coverage of employees in accordance with those purposes. It does not mean that the Act should be applied liberally to provide such coverage when it best suits the employee's (or his dependents') desire or purpose, but reverse that policy and apply it strictly to find no coverage when that would best suit the employee's (or his dependents') desire or purpose.

■ Also to be considered is the fact that the Act has a correlated purpose in its benefit to the employer. The proposition seems self-evident that the objective to be desired, of doing equal justice to both parties, requires that the announced policy of liberality in finding coverage for employees should be followed consistently; and if upon a fair and realistic appraisal of the total fact situation, it appears that the employer has complied with the act and provided coverage for his employees, he should be entitled to the protections from lawsuits and possible judgments it expressly grants him.[4]

■ The applicable statutes are in harmony with the conclusion just stated. As noted above, Section 35–1–60, U.C.A. 1953, provides that where there is Workmen's Compensation it shall be the exclusive remedy. The only provision in the Act which deprives an employer of that protection is Section 35–1–57 which states that:

> Employers who shall fail to comply with the provisions of section 35–1–46 shall not be entitled to the benefits of this title during the period of noncompliance, but shall be liable in a civil action
> . . . .

We have heretofore had occasion to observe that Section 35–1–46 referred to, which provides for insurance coverage in one of three ways, should be regarded as an integrated whole; and that if the employer has provided coverage in any one of the three ways, that will clothe him with the immunity from suit.[5]

---

2. See Sec. 35–1–68, U.C.A.1953.

3. Cook v. Peter Kiewit Sons Co., 15 Utah 2d 20, 386 P.2d 616; M & K Corp. v. Industrial Comm., 112 Utah 488, 189 P.2d 132; Spencer v. Industrial Comm., 4 Utah 2d 188, 290 P.2d 692.

4. Ibid.; see also Smith v. Alfred Brown Co., 27 Utah 2d 155, 493 P.2d 994.

5. Lovato v. Beatrice Foods, 22 Utah 2d 371, 453 P.2d 692 (1969).

Plaintiff makes the argument that notwithstanding the provisions of the statutes just discussed, the defendants can claim immunity from suit only by strict compliance with all of the provisions of the Act, specifically, that the defendants failed to qualify for such protection because they did not meet the requirement of Section 35–1–56 which requires the employer to:

> . . . post in conspicuous places about his place of business typewritten or printed notices stating, that he has complied with the provisions of this title and
> . . . .

We are neither unaware nor unappreciative of the plaintiff's argument based on what this court said in Murray v. Strike, [6] concerning the requirement of posting notice so that employees may be aware of their status in regard to being insured, or being left to their remedy against the employer. However, despite what has been said about the matter in business or industrial establishments, we do not see how it can be gainsaid that the purpose of giving such a notice is to inform the noticee of the facts contained therein. Correlated to this, it seems a sound enough proposition that the failure to post such a notice on the farm should not deprive the defendants of their rights unless it could affect the insurance coverage, or in some conceivable way adversely affect the other party entitled to notice, i.e. the plaintiff.

In that regard it appears without dispute that Robert Buhler was present when his brother David suffered an injury to his hand a few weeks previously, for which he received medical treatment, was laid off and received Workmen's Compensation. There can be no question but that both Robert and his father, the plaintiff here, knew of the Workmen's Compensation coverage on the employees. Consequently, under these circumstances the lack of posted notice on the farm could not have had any practical effect in the situation and it should not deprive the defendants of the protection they had arranged and paid for.

Supplementing the foregoing, the trial court also ruled that in accepting the $525 for Robert's burial and $14.20 for ambulance service from the State Insurance Fund he should be deemed to have elected his remedy and for this reason should be precluded from maintaining this suit.

Our agreement with the rejection of the plaintiff's asserted cause of action on the ground that the benefits provided in the Workmen's Compensation Act is the exclusive remedy for the death of his son, renders it unnecessary and inadvisable to extend our discussion to other points he raised concerning defendants' alleged negligence and/or improper conduct in allowing Robert to work near machinery, [7] and the latter's possible contributory negligence, all of which would be pertinent only if this lawsuit proceeded to the issue of the defendants' liability for wrongful death of the son Robert.

Affirmed. The parties to bear their own costs.

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

6. 76 Utah 118, 287 P. 922 (1930).

7. As to that charge the applicable statute as it read at the time in question, Sec. 34–23–1(3), U.C.A.1953 (as amended 1969), provided: "No minor under 16 years of age shall at any time be employed, permitted . . . to work on or in connection with any power-driven machinery . . . except a minor 14 years of age or older may be employed in the first processing of agricultural products and other nonhazardous occupations and may be permitted to operate power-driven farm machinery . . . with consent of the minor's parent, guardian or custodian." These facts appear to be uncontrovertible: that there was no machinery in the silo itself, nor adjunctive thereto, from which it could be classified as either machinery, or a dangerous instrumentality; and further, that the son Robert did in fact have the permission of his parents to work on the dairy farm with knowledge that he would be working with the farm machinery.