Ivan S. MARTIN

v.

**SCOTT PAPER COMPANY.**

Supreme Judicial Court of Maine.

Argued March 6, 1986.

Decided June 20, 1986.

Philip C. Worden (orally), Guilford, for plaintiff.

Mitchell & Stearns, Andrew M. Mead (orally), John W. Ballou, Bangor, for defendant.

Before NICHOLS, ROBERTS, VIOL-ETTE, WATHEN, GLASSMAN and SCOL-NIK, JJ.

GLASSMAN, Justice.

The plaintiff, Ivan S. Martin (Martin), appeals from a judgment for the defendant, Scott Paper Company (Scott) entered on the orders of the Superior Court, Piscataquis County, granting the motions of Scott for summary judgment as to Count I of Martin's complaint and to dismiss for failure to state a claim for which relief could be granted as to Counts II, III and V of the complaint. For the reasons set forth herein, we vacate the judgment as to Count I and affirm as to Counts II, III and V.

Martin filed a civil action against Scott seeking damages for injuries sustained by Martin while cutting wood on land owned by Scott near Bald Mountain in Piscataquis County. In Count I Martin claimed he was an employee of Scott at the time he was injured as a result of the negligence of Scott, who by reason of alleged failure to comply with the notice requirement of 39 M.R.S.A. § 26 (Supp.1985–1986)[1] had waived immunity to civil suit by Martin. In Count II, Martin alleged that as an employee of Scott, he is a third-party beneficiary of a contract between Scott and Robert Smith (Smith), an "independent jobber" who was also an employee of Scott and who had contracted with Scott to cut pulpwood on Bald Mountain. In Count III, Martin claimed as an employee of Scott he is entitled to relief from Scott under the doctrine of promissory estoppel based upon the contract between Scott and Smith. In Count V, Martin sought punitive damages based upon Counts II and III. Scott, by its

answer denied, *inter alia*, that Martin and Smith were employees of Scott.

In its first order, the trial court granted Scott's motion to dismiss Counts II, III and V of Martin's complaint for failure to state a claim for which relief could be granted. M.R.Civ.P. 12(b)(6). In its second order, the court granted Scott's motion for a summary judgment as to Count I of the complaint, holding as a matter of law that an employer's failure to comply with 39 M.R.S.A. § 26 is not a waiver of the protections afforded by section 28 of the Act, and, therefore, Martin was not entitled to bring a civil action against Scott.

## I. THE PLAINTIFF AS THIRD–PARTY BENEFICIARY

We turn first to the contract between Smith and Scott, which obligated Smith to secure workers' compensation insurance to cover his employees. After its expiration on January 31, 1983, Scott extended the contract so Smith could clean up the work area on Bald Mountain, but Smith allowed his workers' compensation insurance to lapse in January of 1983, approximately two months before Martin seriously injured his hand.[2]

Martin alleges that Smith and Scott entered into their contract for Martin's benefit, and that he should accordingly be entitled to enforce against Scott Smith's obligation to carry workers' compensation insurance. In the proper circumstances we recognize that a third person may sue on a contract to which that person was not a party. *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210 (Me.1973). In order for the beneficiary to enforce the contract, however, the promisee must intend that the

1. Section 26 provides:

    A notice in such form as the commission approves, stating that the employer has conformed to this Act, together with such further matters as the commission determines, shall be posted by the employer and kept posted by him at some place in each of his mills, factories or places of business, conspicuous and accessible to his employees. Any notice posted pursuant to this section shall set out the provision of section 110 of this Act. For will-

ful failure to post such notices, the employer shall be liable to a forfeiture of $10 for each day of such willful neglect, to be enforced by the commission in a civil action in the name of the State.

2. Martin initially alleged causes of action against both Smith and Scott but later voluntarily dismissed his claims against Smith, who had filed for bankruptcy protection.

beneficiary receive the benefit of the promised performance. *Restatement (Second) of Contracts* § 302(1)(b) (1981).

■ On the facts alleged in Martin's complaint, we reject Martin's contention that Smith and Scott entered into the contract for his benefit. As an employee of Scott, Martin cannot be said to be a beneficiary of the contractual provision obligating Smith to carry workers' compensation insurance for his employees. We do not agree with Martin that Scott was legally obligated to ensure that Martin would be covered by Smith's workers' compensation insurance policy. Accordingly, we conclude that the Superior Court correctly dismissed the third-party beneficiary claim.

## II. PROMISSORY ESTOPPEL

■ Martin next argues that he stated a claim for relief under the doctrine of promissory estoppel. We have approved that doctrine as it is set forth in section 90 of the *Restatement (Second) of Contracts. Chapman v. Bomann,* 381 A.2d 1123, 1127 (Me.1978). Section 90 provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

For purposes of promissory estoppel, a promise need not be express but may be implied from a party's conduct. *Ziegler v. Ryan,* 285 N.W. 875, 879, 66 S.D. 491, 498 (1939). Martin contends that Scott had impliedly promised him that he would be covered by Smith's workers' compensation insurance. We do not agree.

■ Scott's conduct in obligating Smith to obtain insurance does not rise to the level of a promise enforceable against it

under principles of promissory estoppel. The basis of that conduct was Scott's contract with Smith, to which Martin was not a party. Any promise of insurance, express or implied, arising out of that contract is enforceable against Smith only because it was Smith who was obligated to secure this insurance. Smith's failure to extend his insurance policy past its January, 1983, expiration is not chargeable to Scott by Martin under the allegations in the complaint in this case as a breach of an implied promise. The trial court was therefore correct in dismissing Martin's promissory estoppel claim. Martin concedes that Count V of his complaint cannot survive a dismissal of Counts II and III.

## III. NEGLIGENCE

Martin contends finally that Scott's alleged failure to comply with 39 M.R.S.A. § 26 constitutes a waiver of the protection afforded by section 26 of the Workers' Compensation Act ("the Act"). In determining whether the lower court erred in granting Scott's motion for summary judgment, we accept as true the uncontroverted fact that Scott failed to post notices in the Bald Mountain area where Martin was injured informing its employees of their coverage under the Act. *See Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433, 434 (Me.1982).

Scott implies that because section 26 is unrelated to the actual securing of compensation insurance, it should be read out of the provision in section 28 immunizing from civil suit those employees who have "secured the payment of compensation as provided in sections 21 to 27."[3] To simply read section 26 out of section 28 of the Act because an employer's failure to post the notices required by that section will not affect its workers' compensation insurance policy is to depart from well-settled principles of statutory construction. Our duty is

---

**3.** Section 28 reads in pertinent part:
    An employee of an employer, who shall have secured the payment of compensation as provided in sections 21 to 27 shall be held to have waived his right of action at common law to recover damages for the injuries sustained by him, and under the statutes specified in section 4.

first to " 'give effect to the intent of the Legislature as evidenced by the language of the statute.' " *Stone v. Board of Registration in Medicine,* 503 A.2d 222, 226 (Me.1986) (quoting *Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.,* 411 A.2d 1017, 1020 (Me.1980)). One way to interpret the language at issue in section 28 is to read sections 21 to 27 as sections that deal with the "obligation of an employer to install a workers' compensation program." *Beverage v. Cumberland Farms Northern, Inc.,* 502 A.2d 486, 488 (Me.1985). The language "secure the payment of compensation in conformity with sections 21 to 27" is the "precise language used in section 21 in prescribing the employer's obligation to provide compensation." *Id.* Thus, the notice provisions in section 26, far from having no relation to the securing of payment of compensation, may be construed as an integral part of "install[ing] a workers' compensation program."

However, assuming that the phrase "secured the payment of compensation as provided in sections 21 to 27" is ambiguous, the next step is not to ignore a part of the phrase, but to "go beyond the wording of the legislation and look to the history of the statute itself [and] the policy behind it ... in order to reach true legislative intendment." *Mundy v. Simmons,* 424 A.2d 135, 137 (Me.1980); *see State v. Philbrick,* 402 A.2d 59, 62 (Me.1979) (when statute has failed to define a crucial phrase, "our analysis must attempt to find a meaning consistent with the overall statutory context," the purpose of the statute, its occasion and necessity and the consequences of a particular interpretation).

The purpose of the Worker's Compensation Act is to "provide compensation for the loss of earning capacity arising from work-related injuries." *Daigle v. Daigle,* 505 A.2d 778, 779 (Me.1986); *see Levesque v. Shorey,* 286 A.2d 606, 609 (Me.1972).

The legislative intent in enacting a comprehensive workers' compensation scheme " 'was to giv[e] effect to the underlying policy of providing certainty of remedy to the injured employee and absolute but limited and determinate liability for the employer.' " *Beverage,* 502 A.2d at 489 (quoting *McKellar v. Clark Equipment Co.,* 472 A.2d 411, 414 (Me.1984)). We have consistently held that the Act is "remedial in nature and 'is to be so construed to accomplish its beneficent purpose and avoid incongruous or harsh results.' " *Daigle,* 505 A.2d at 779 (quoting *Clark v. DeCoster Egg Farms,* 421 A.2d 939, 942 (Me.1980)).[4]

To construe section 28 of the Act to require an employee, whose employer has failed to post a section 26 notice, to bear the burden of discovering that his employer has secured compensation insurance, to overcome any delay thereby involved, and to assume the risk of untimely filing, is contrary to underlying policies of the Act. An employee who has to bear these burdens is deprived of any certainty of remedy and possibly of any compensation for his injury. On the other hand, an employer is potentially able to evade both payment under the Act to an unnotified employee who has made an untimely filing, as well as liability in any civil suit. Such a practical and incongruous consequence would result if section 28 is interpreted to allow an employer who has failed to post a notice to continue to claim immunity from civil suit. *See Tiedemann v. Johnson,* 316 A.2d 359, 364 (Me.1974).

To treat the minimal ten dollar per day penalty provided in section 26 for willful failure to post notices as the exclusive sanction for noncompliance with section 26, as did the trial court, is also inconsistent with the purpose of the notice provision and the legislative history of section 26. The purpose of the notice provision is "to ensure that employees and their depend-

---

**4.** As we noted in *Daigle,* 505 A.2d at 779 n. 2, section 94–A(3) of the Act, which directed the Commission to construe the Act liberally, was repealed and replaced in 1985. P.L.1985, c. 372, § A, 34 (effective June 30, 1985). However, the new section 94–A(3) applies only to injuries occurring on and after the effective date, rendering it inapplicable here.

ents are aware of their rights." 2A *Larson's Workmen's Compensation Law* § 67.25 (1983). How is an employee, who has not been informed of these rights and concurrent obligations, to comply with the requirements of the Act for maintaining compensation proceedings? As this court recently recognized in a decision also implicating notice to an employee of his right to compensation, we must consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.,* 507 A.2d 581, 583 (Me.1986) (completion of trial work agreement did not terminate employer's obligation under earlier compensation agreement since Legislature clearly intended an employee be specifically notified before losing or surrendering his right to compensation). To allow an employer who has not complied with the notice provisions of section 26 to continue under the Act to claim immunity from civil suit would be inconsistent with the notice requirements in section 63 precluding compensation proceedings unless the employer has been given notice of the injury within thirty days of its occurrence.

■ The legislative history of section 26 further supports a conclusion that an employer who fails to comply with the notice provisions loses his immunity to civil suit. The forerunner to section 26 in the original act contained the provision subjecting an employer to a ten dollar per day penalty for willful failure to post. P.L. 1915, c. 295, § 6, ¶ V. However, it further provided: "Such failure to so post notices shall not, however, affect the rights or liabilities of the employer or the employee hereunder." This sentence was specifically deleted from the Act in 1929. P.L. 1929, c. 300, § 6, ¶ VI. Thus, although the Legislature did at one time intend that the liabilities of the employer or the rights of the employee not be affected by the employer's failure to post, that is no longer true.

■ The fact that the penalty for willful failure to post was enacted along with the subsequently deleted section affecting liabilities indicates that it was meant to deter only such willful failure to post, and not to affect other forms of noncompliance. Furthermore, the penalty is payable not to the claimant, but to the State. This factor was one that led the court in *Gibson v. National Ben Franklin Insurance Co.,* 387 A.2d 220, 223 (Me.1978), to conclude that a similar sanction in section 104–A of the Act was not intended to exclude every other remedy.[5] Because section 19 of Article I of the Maine Constitution provides that every person, for an injury done him, "shall have a remedy by due course of law," the *Gibson* court reasoned that legislation should not be deemed to preclude an injured person from having a remedy of his own absent "clear manifestation of intent to that effect." *Id.* If an injured worker is prejudiced by the failure to post, the minimal penalty, which is payable to the State and assessed only for willful noncompliance, should be treated as an additional and not the exclusive sanction for noncompliance. The notice provision of the statute is too much an integral part of the entire Act to be enforced by a mere ten dollar per day penalty.

■ Turning to Scott's final point, whether Martin had actual notice of coverage under the Act and thereby was not affected by the lack of posted notice is clearly on the record of this case a factual issue that is in dispute.[6] This issue as well as whether Martin was an employee of Scott at the time he was injured and whether Scott complied with section 26 of the Act

---

5. Section 104–A provides for sanctions against a carrier for failure to make timely payments of compensation as required under the Act.

6. Scott's reliance on *Buhler v. Gossner,* 530 P.2d 803, 806 (Utah 1975) in this context is misplaced. The *Buhler* court carefully limited its holding that the lack of posted notice on the farm could not have any practical effect when the claimant had, without dispute, knowledge of the Workmen's Compensation coverage of the farm employees.

are all genuine issues of material facts presented by the record in this case. *See Procise v. Electric Mutual Liability Insurance Co.*, 494 A.2d 1375, 1380 (Me. 1985); *Culbert*, 444 A.2d at 434. Accordingly, the trial court erred in granting Scott's motion for summary judgment as to the negligence count of Martin's complaint.

The entry is:

Judgment vacated as to Count I and affirmed in all other respects.

All concurring